UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00698-FDW-SCR

| WARREN WRIGHT, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER** |
| DEPUY ORTHOPAEDICS, INC., DEPUY INC., JOHNSON & JOHNSON SERVICES, INC., DEPUY INTERNATIONAL LIMITED, JOHNSON & JOHNSON INTERNATIONAL, AND JOHNSON & JOHNSON, | ) |
| Defendants. | ) |

THIS MATTER is before the Court on Plaintiff's Motion to Consolidate this case with Brown v. DePuy Orthopaedics, Inc. et al., Case No. 3:22-CV-00699. (Doc. No. 73). The Motion has been fully briefed, (Doc. Nos. 73, 74, 76), and is ripe for review. Having carefully considered the arguments of the parties, the record, and the applicable authority, the Court will DENY Plaintiff's Motion to Consolidate for the purposes of handling potential pretrial dispositive motions only; Plaintiff's Motion is otherwise DENIED WITHOUT PREJUDICE. Plaintiff may renew his Motion to Consolidate the case for trial after the Court rules on any potential pretrial dispositive motions filed in the respective cases, or after the time for dispositive motions has passed, if no such motions are filed.

I. BACKGROUND

This Motion concerns two products liability cases regarding Defendants' hip implant: the Pinnacle Acetabular Cup System with Ultamet Metal Liner ("Pinnacle Device"). (Doc. No. 73, pp. 2–3). Both cases were transferred to this district from a multidistrict litigation ("MDL") before

1

the United States District Court for the Northern District of Texas: In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.. (Id.).

Plaintiff moves to consolidate his case with the other Pinnacle Device case transferred from the MDL to this district. In his Motion, Plaintiff points to several commonalities he contends justify consolidation of the two cases:

(1) Both plaintiffs received the same Pinnacle Device, and these surgeries were both performed in North Carolina;

(2) Both plaintiffs received injuries from the Pinnacle Device;[1]

(3) Both plaintiffs had revision surgery as a result of these injuries, and these surgeries were both performed in North Carolina; and

(4) Both plaintiffs assert similar claims against Defendants.[2]

(Doc. No. 76, pp. 2–3). As a result of this significant overlap in facts, the two cases have many witnesses in common—58 in total.[3] In further support of consolidation, Plaintiff point to three Pinnacle Device MDL bellwether trials, each of which consolidated five to six cases for trial.[4] (Id. at pp. 9–11).

---

[1] Both plaintiffs claim the Pinnacle Device caused "pain and other discomforts, difficulty conducting activities of daily living, consequences associated with exposure to metal ions, revision surgery and its related consequences, and emotional distress." (Doc. 74–1, pp. 8); (Doc. 74–3, p. 9). Plaintiff Brown adds that she continues to have "difficulty standing; pain in hip, leg and lower back; reduced flexibility and decreased range of motion; metal shaving in [her] blood test; [and] blood in urine due to kidney problems," (Doc. 74–3, p. 9), while Plaintiff Wright adds that he continues to have "pain and discomfort [and] difficulty conducting activities of daily living," (Doc. 74–1, pp. 8–9).

[2] The complaints of Plaintiffs Wright and Brown allege the same 11 causes of action: (1) strict liability—failure to warn; (2) strict liability—design defect; (3) negligence; (4) negligence per se; (5) negligent misrepresentation; (6) fraudulent concealment; (7) breach of express warranty; (8) breach of implied warranty; (9) fraud; (10) unfair and deceptive trade practices; and (11) punitive damages. (Doc. 1, pp. 13–28); (3:22-CV-00699, Doc. 1, pp. 13–28).

[3] (Doc. No. 73, pp. 4–5 (identifying 8 retained expert witnesses for Defendants, 31 non-retained expert witnesses for Defendants, 15 retained expert witnesses for Plaintiffs, and 4 retained expert witnesses for Plaintiffs)).

[4] The three cases are In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig., 2016 WL 10719395 (N.D. Tex. 2016) ("DePuy I"); In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig., 2017 WL 3841608 (N.D. Tex. 2017) ("DePuy II); and In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig., 2019 WL 13194017 (N.D. Tex. 2019) ("DePuy III").

In opposition to consolidation, Defendants contend that although there are several witnesses common to each case, the witnesses will need to give different testimony on issues particular to each Plaintiff's case—especially the issue of specific causation. (Doc. No. 74, p. 8). Defendants also emphasize that many of the issues common to these two cases were resolved when the cases were still part of the MDL. (Id. at p. 10). Additionally, Defendants point to empirical studies indicating that, in general, the consolidation of cases tends to harm defendants. (Id. at pp. 9–10).

## II. LEGAL STANDARD

"If actions before the court involve a common question of law or fact," the Court may consolidate the actions. Fed. R. Civ. Pro. 42(a)(2). "[P]roper application of Rule 42(a) requires the district court to determine 'whether the specific risks of prejudice and possible confusion' from consolidation '[are] overborne by the risk of inconsistent adjudications . . . , the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'" Campbell v. Bos. Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018) (quoting Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982), rev'd on other grounds, 712 F.2d 899 (4th Cir. 1983) (en banc)). Ultimately, however, district courts "have broad discretion in determining whether to consolidate." Green v. Midland Credit Mgmt., Inc., No. 3:19-CV-00680, 2020 WL 8510022 (W.D.N.C. Dec. 18, 2020) (citing A/S Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 933 (4th Cir. 1977)).

## III. DISCUSSION

In exercising its broad discretion, the Court finds that consolidation is not warranted at this stage of the proceedings—that is, in the pretrial stage as the Court considers dispositive motions

3

and other matters particular to each individual case. The Court agrees with Defendants' contention that, at this stage, it is likely the potential "pre-trial motions in these matters will turn on the divergent case-specific facts of each Plaintiff." (Doc. No. 74, p. 11). This is especially likely since "the majority of common issues" in the present cases, especially regarding discovery, have already been addressed in the MDL.[5] (Id.). Resolution of potential pretrial dispositive motions—including motions for partial summary judgment, motions to exclude, and motions in limine—will partially depend on specific factual allegations made by each Plaintiff. Consolidation would therefore hinder the Court's ability to rule on these matters. Accordingly, the Court denies the Motion to Consolidate.

However, the Court makes no determination on whether consolidation is appropriate for trial once all potential pretrial dispositive motions are resolved. The issue of consolidation for trial is best determined after the close of pretrial motions since it is not yet clear whether factual differences between the two cases would create jury confusion or prejudice for Defendants at trial. Therefore, the Court declines to consider, at this time, consolidation for purposes other than the resolution of potential pretrial dispositive motions. Plaintiff may renew his Motion to Consolidate for trial after the Court rules on any potential pretrial dispositive motions filed in this case and in Brown.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion is DENIED WITHOUT PREJUDICE at this stage in the proceedings. Plaintiff may renew his Motion to Consolidate the

---

[5] Significantly, the Court recognizes that it "will have the benefit of [the MDL court]'s rulings on various issues related to personal jurisdiction, summary judgment, and admissibility pursuant to the rules of evidence and the Daubert standard based on the memorandum opinions and orders entered in those cases." (Doc. 57, p. 4). The Court also notes that, at the time of transfer, the MDL refrained from ruling on several case-specific pretrial dispositive motions "[b]ecause ruling on these motions [would] directly impact the claims, defenses, and presentation and admissibility of evidence at trial." (Doc. 54).

4

cases for trial after the Court rules on potential pretrial dispositive motions filed in the respective cases, or after the time for dispositive motions has passed, if no such motions are filed.

    IT IS SO ORDERED.

Signed: June 5, 2023

Frank D. Whitney
United States District Judge